**Charles M. DAWE, Petitioner,**

v.

**OLD BEN COAL COMPANY and Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents.**

**No. 84–1450.**

United States Court of Appeals, Seventh Circuit.

Submitted Nov. 28, 1984.[*]

Decided February 4, 1985.

---

[*] After preliminary examination of the briefs, the court notified the parties that it had tentatively

concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." *See* Rule 34(a), Fed.R.App.P.; Circuit Rule 14(f). No such statement having been filed, the appeal has been submitted on the briefs and record.

Jeff Troutt, Caldwell, Troutt, Alexander, Quindry & Popit, Benton, Ill., for petitioner.

Roscoe C. Bryant, III, U.S. Dept. of Labor, Washington, D.C., Mark M. Pierce, Old Ben Coal Co., Lexington, Ky., for respondents.

Before CUMMINGS, Chief Judge, CUDAHY and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

Petitioner Charles M. Dawe appeals from an order of the Benefits Review Board dismissing his appeal of an unfavorable decision on his application for federal black lung disability benefits. For the reasons stated below, we must affirm dismissal by the Board.

### I.

On June 12, 1978, petitioner applied for black lung benefits under Title IV of the Federal Coal Mine Health and Safety Act of 1969, as amended, 30 U.S.C. § 901 *et seq.* He was initially determined to be eligible for benefits on August 11, 1980. Respondent Old Ben Coal Company, Dawe's former employer, requested a *de novo* hearing before an Administrative Law Judge (ALJ). The ALJ determined that petitioner was ineligible for benefits in a Decision and Order dated October 5, 1983. Petitioner filed a notice of appeal, a request to extend time for filing notice of appeal, and an attorney's affidavit with the Benefits Review Board on November 8, 1983, thirty-four days after the ALJ's decision was issued. The Board ruled, on January 25, 1984, that it was without jurisdiction to hear the appeal because the notice was not timely filed. Petitioner now seeks review of that decision.

Black lung benefit applications are governed by the procedural provisions of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 932(a) incorporating selected provisions of Title 33. Review of an ALJ's decision by the Benefits Review Board is authorized by 33 U.S.C. § 921(b). Unless application for review is made to the Board within thirty days after a compensation order is filed with the Deputy Commissioner, Department of Labor, that order becomes final. 33 U.S.C. § 921(a). The order of the ALJ is deemed to be filed with the Deputy Commissioner on the date that it is issued, 20 C.F.R. § 725.478, and, in this case, the ALJ's Decision and Order contained a statement that an appeal could be filed "within 30 days from the date of this Decision." Petitioner's appeal was filed four days after the deadline.

In the attorney's affidavit, submitted with the notice of appeal, petitioner's attorney stated that the completed notice of appeal was finalized on October 26th, nine days before the deadline, but that his secretary had not carried out his instructions to forward it immediately to the Benefits Review Board. The attorney learned that it had not been sent on November 8th and immediately filed the papers listed above. Petitioner argues that the Board has the power to accept an appeal which is not timely filed due to clerical error and that the instant case is a proper one for the exercise of that power by the Board.

To support these arguments, petitioner cites the case of *Morris v. Clinchfield Coal Company*, 3 BLR 1–49 (1981), in which the Board accepted an appeal filed by an employer approximately four months after the ALJ's decision was issued. *Morris*, however, is distinguishable from the instant case, as petitioner acknowledges. There, copies of the ALJ's decision were not mailed to the parties, due to agency clerical error, until three months after the decision was issued. Neither the claimant nor his former employer had any notice that a decision had been rendered until they received the delayed copies. In that situation, the Board held that the order did not become final until thirty days after "completion of the steps required to make it effective: 1) filing in the Office of the Deputy Commissioner, and 2) mailing to the parties." There is no dispute in this case that both of those steps were taken on October 5, 1983.

With the arguable exception of *Morris*, petitioner's position receives no support from the relevant statute, regulations or case law. The statute, as noted, makes the compensation order final unless an appeal is filed within thirty days. Regulations state unequivocally that failure to file an appeal within the time allotted "shall foreclose all rights to review by the Board.... Any untimely appeal will be summarily dismissed by the Board for lack of jurisdiction." 20 C.F.R. § 802.205(c). The thirty-day requirement has been strictly adhered to by this court, even when the ALJ's order did not contain the information about claimant's appeal rights. *Bennett v. Director, Office of Workers' Compensation Programs*, 717 F.2d 1167 (7th Cir.1983). In *Bennett*, we stated,

> "Excusable neglect" [as a] ground for extending the time limits for an appeal does not apply in this case of administrative proceedings governed by 33 U.S.C. § 921.... No constitutional, statutory or other authority supports the enlargement of [the applicable] time limits.

*Id.* at 1170.

The power of the Board exercised in *Morris* is considerably less than the power it is urged to exercise here, and *Morris* cannot be used to reach the result requested by petitioner. Lack of actual notice that a decision has been rendered is fatal to a party's right to appeal that decision; the decision in *Morris* is required by fundamental due process considerations. There was no failure of notice in this case, and consequently the decision of the Benefits Review Board must be affirmed.

## II.

For the reasons set out above, this court is without authority to alter the ruling of the Board and to restore to petitioner the appeal rights that he lost by his untimely filing. We can, however, note our dissatisfaction with the required result in this case.

Petitioner worked for thirty-four years in the nation's coal mines, with approximately thirty of those years being spent in work underground. With this record, he is entitled to a statutory presumption of total disability due to black lung disease if certain medical findings are present. 20 C.F.R. § 727.203(a). The medical evidence must contain at least some indication that he suffers from and is disabled by black lung disease, for there was enough to warrant an initial determination that he qualified for benefits. The petitioner, therefore, is one of the individuals of concern to Congress when it enacted the Federal Coal Mine Health and Safety Act, an extensive measure whose purpose was "to protect the health and safety of coal miners, and to combat the steady toll of life, limb, and lung, which terrorizes so many unfortunate families." H.R.Rep. No. 91–563, 91st Cong., 1st Sess. *reprinted in* 1969 U.S. Code Cong. & Admin.News 2503. The remedial purpose of that act and the burdens on the nation's miners that prompted the act, *see id.* at 2506–08, would seem to require the maximum in full consideration and fair treatment of claims by such individuals. We cannot say that the events in this case reach that goal.

Petitioner filed his application for black lung benefits in August 1978. He did not receive an initial determination of that claim until two years later, and then he had

to wait for another three years to learn the results of the *de novo* hearing requested by his former employer, who would have been responsible for payment if benefits were granted. After five years of uncertainty about a claim, which he had every right to make, for benefits for which he was presumptively qualified, petitioner then made the error that cost him the important rights of administrative and judicial review: he delayed four full days in filing his notice of appeal. Against this background, we cannot avoid a sense of unease.

In some legislative schemes designed to remediate or prevent harm to certain portions of the public, the doctrine of equitable tolling has been allowed to apply to give reasonable leeway in application of time limits and similar requirements. Perhaps the most well-known instance involves the Title VII civil rights provisions, where untimely private enforcement actions may be accepted if there is good cause for the delay. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982). Although this possibility was not discussed by petitioner in his appeal, the court researched the possibility of similar flexibility in the area of black lung benefit applications. We found no authority to support the application of equitable tolling or any other mechanism for allowing a degree of flexibility in these cases. In view of the background of the black lung benefits program, the long delay here together with inflexible restrictions on the claimant seem particularly inappropriate.

There has been difficulty in the past with procedural restrictions that limited Congress' strong intention to provide remedial benefits to former coal miners. In 1972, Congress amended the 1969 Act in order to more adequately meet the objectives of that earlier legislation. S.Rep. No. 92–743, 92nd Cong., 2d Sess. (1972) *reprinted in* 1972 U.S.Code Cong. & Admin.News 2305.

Concern was expressed about the rate of denials in benefit applications, *id.* at 2307, and coverage was expanded in several ways (prohibiting denials based only on x-rays, providing statutory presumptions of disability, and requiring use of tests other than x-rays in ruling out disability), *id.* at 2312–20. The 1972 amendments also made statutory changes and directed regulatory changes in the method of making determinations (then under the Secretary of Health, Education and Welfare) in order to "permit prompt and vigorous processing of the large backlog of claims." *Id.* at 2322. The 1972 act was "intended to be a remedial law—to improve upon the 1969 provisions so that cases which should be compensated, will be compensated." *Id.* at 2315. The original legislation, its subsequent amendment, and the strong language in the legislative history express a concern for miners and their right to fair and liberal treatment that is not echoed in the delay and strict procedural limitations which shape the case before us.

AFFIRMED.