**ARCH MINERAL CORPORATION, Petitioner,**

v.

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Respondent.**

No. 84–2633.

United States Court of Appeals, Seventh Circuit.

Submitted March 12, 1986.

Decided Aug. 11, 1986.*

---

\* After preliminary examination of petitioner's brief and the record, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in

Mark E. Solomons, Kilcullen, Wilson & Kilcullen, Washington, D.C., for petitioner.

J. Michael O'Neill, Ronald G. Ray, Office of Solicitor, Dept. of Labor, Washington, D.C., for respondent.

Before BAUER, CUDAHY, and FLAUM, Circuit Judges.

CUDAHY, Circuit Judge.

This is a petition for review of an order of the Benefits Review Board of the United States Department of Labor, which affirmed an administrative law judge's decision to award benefits under the Black Lung Benefits Act, 30 U.S.C. § 901, *et seq.* Petitioner, Arch Mineral Corporation ("Arch Mineral"), challenges the award of benefits to the surviving spouse of one of its former employees. For the reasons that follow, we deny the petition.

I

The claimant, Jewell Degenhardt, applied for black lung benefits on February 26, 1981, and an administrative law judge (an "ALJ") subsequently determined that she was entitled to receive the benefits. Arch Mineral appealed and, on November 21, 1983, the Benefits Review Board (the "Board") affirmed the decision of the ALJ. *Degenhardt v. Arch Mineral Corp.*, 6 B.L.R. 1–612 (1983) (per curiam). On December 1, Arch Mineral timely filed a motion for reconsideration with the Board,

this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." *See* Rule 34(a), Fed.R.App.P.; Circuit Rule 14(f). Petitioner filed such a statement requesting oral argument. Initially, respondent expressly waived his opportunity to file a brief in this case. However, upon further consideration of petitioner's brief and the record, we ordered respondent to file a brief and permitted petitioner to file a reply brief. We also ordered the parties to brief the jurisdictional issue discussed *infra.* Having considered all of the above, we decide this case solely on the briefs and the record.

which was denied on July 27, 1984. On September 24, 1984, Arch Mineral filed a petition for review in this court.

We must first consider questions of subject matter jurisdiction even if they have not been raised by the parties. *Director, OWCP v. Alabama By-Products Corp.,* 560 F.2d 710, 715 (5th Cir.1977). If petitioner did not timely file the petition for review, we must dismiss the appeal for want of jurisdiction. *Clay v. Director, OWCP,* 748 F.2d 501, 503 (8th Cir.1984); *Pittston Stevedoring Corp. v. Dellaventura,* 544 F.2d 35, 43–44 (2d Cir.1976), *aff'd on other grounds sub nom., Northeast Marine Terminal Co. v. Caputo,* 432 U.S. 249, 97 S.Ct. 2348, 53 L.Ed.2d 320 (1977). *Compare also Dawe v. Old Ben Coal Co.,* 754 F.2d 225, 227 (7th Cir.1985) (failure to appeal ALJ decision to Board within 30 days); *Bennett v. Director, OWCP,* 717 F.2d 1167, 1169 (7th Cir.1983) (same); *Insurance Co. of North America v. Gee,* 702 F.2d 411, 414 (2d Cir.1983) (same); *Blevins v. Director, OWCP,* 683 F.2d 139, 140–41 (6th Cir.1982) (same). The applicable statute provides that "[a]ny person adversely affected or aggrieved by a final order of the Board may obtain a review of that order in the United States court of appeals for the circuit in which the injury occurred, by filing in such court within sixty days following the issuance of such Board order a written petition praying that the order be modified or set aside." 33 U.S.C. § 921(c). Arch Mineral's petition was filed within sixty days of the denial of reconsideration, but not within sixty days of the original decision on the merits by the Board. We must determine whether the timely filing of a motion for reconsideration suspends

the time for filing the petition for appellate review. Apparently, no other court has yet considered this question. *But cf. Director, OWCP v. Congleton,* 743 F.2d 428, 429, 433 (6th Cir.1984) (petition for review apparently filed within sixty days after Board's denial of reconsideration, but not within sixty days after original Board decision; court reviewed original Board decision without mentioning jurisdictional question).

We must focus initially on the language of the statute, which provides for an appeal within sixty days of the "issuance" of the "final order." The case law makes clear that the relevant provision of section 921(c) measures the time for appeal from the date the decision is filed, pursuant to 20 C.F.R. § 802.403(b), rather than from the date an aggrieved party receives notice of the decision. *See Pittston Stevedoring,* 544 F.2d at 44; *INA v. Gee,* 702 F.2d at 414; *see also Dawe,* 754 F.2d at 225 (applying 30-day period for appealing to Board). Neither the statute nor the cases make clear the effect, if any, upon the required time for filing an appeal, of an intervening motion for reconsideration of the Board's decision.[1] We therefore turn to an examination of the administrative regulations, which are entitled to some deference.[2] *See Peabody Coal Co. v. Director, OWCP,* 778 F.2d 358, 361 (7th Cir.1985); *Clay,* 748 F.2d at 502; *INA v. Gee,* 702 F.2d at 414.

Paralleling the statute, the regulations provide that:

> Within 60 days after a decision by the Board has been filed pursuant to § 802.-403(b), any party adversely affected or aggrieved by such decision may file a petition for review with the appropriate

---

1. Amendments effective September 28, 1984, expanded the size of the Board and provided that panels could hear cases and that parties could then petition for *en banc* reconsiderations. *See* 33 U.S.C. § 921(b)(5). The reconsideration requested in the case *sub judice* occurred before the effective date of these amendments. Additionally, although the board now grants *en banc* reconsiderations, it has yet to amend its regulations in this regard as required by the statutory amendments. *See Williamson v. Zeigler Coal Co.,* 8 B.L.R. 1-401, 402 (1985); *Burgeson v. Kaiser Steel Corp.,* 8 B.L.R. 1-312, 313 (1985).

2. We have also examined the legislative history, which provides no help in resolving the question before us. *See* H.R.Rep. No. 1441, 92d Cong., 2d Sess. 32023, *reprinted in* 1972 U.S. Code Cong. & Ad.News 4698; 118 Cong.Rec. 36270-73 (1972) (senate debate); 118 Cong.Rec. 36381-88 (1972) (house debate); H.R.Rep. No. 570, 98th Cong., 1st Sess. H10579 (daily ed. Nov. 18, 1983), *reprinted in* 1984 U.S.Code Cong. & Ad.News 2734, 2755 (1984 amendments).

U.S. court of appeals pursuant to [33 U.S.C. § 921(c)].

20 C.F.R. § 802.410(a). The regulation applicable to motions for reconsideration provides, *inter alia,* that "failure to file a request for reconsideration shall not be deemed a failure to exhaust administrative remedies." *Id.* § 802.407(b). But the regulations contain no specific provision on the effect, if any, of reconsideration on the time for filing a petition for review. *See id.* §§ 802.407–.409. And, while the regulations provide that requests for reconsideration will be reviewed by the Board and granted or denied at its discretion, there is no specific provision that the Board's ruling on reconsideration be filed pursuant to § 802.403(b), which governs the filing of Board decisions. *Id.* § 802.409. The one section suggesting that a motion for reconsideration suspends the time for filing the petition for review is entitled "Finality of Board decisions" and reads as follows:

> A decision rendered by the Board pursuant to this subpart shall become final 60 days after the issuance of such decision unless a [timely petition for court review is filed], or unless a timely request for reconsideration by the Board has been filed as provided in § 802.407.

*Id.* § 802.406. However, the term "final order" as used in the statute (33 U.S.C. § 921(c)) should be construed as distinct from the term "final decision" as used in 20 C.F.R. § 802.406. "Final order" seems to contrast with "interlocutory order" and refers to the question whether the Board decision is final in the sense that it "ends the litigation on the merits and leaves nothing for the trier to do but execute the judgment." *Newpark Shipbuilding & Repair, Inc. v. Roundtree,* 723 F.2d 399, 400 (5th Cir.) (en banc), *cert. denied,* — U.S. ——, 105 S.Ct. 88, 83 L.Ed.2d 35 (1984). At that point therefore the order becomes subject to judicial review. *Id.* When a Board decision is issued as a "final order," pre-

sumably the sixty days for taking an appeal begins running. "Final decision," on the other hand, seems to refer to the point at which the decision of the Department of Labor is no longer reviewable by any authority, judicial or administrative. *See* 33 U.S.C. §§ 921(a), 921(d); *INA v. Gee,* 702 F.2d at 412; *Blevins,* 683 F.2d at 140–41. Since 20 C.F.R. § 802.406 appears to govern "final decisions" rather than "final orders" (the term used in 33 U.S.C. § 921(c)), the regulation does not directly govern the question before us. And any argument by analogy based on the tolling effect of a motion for reconsideration seems less than convincing.

Thus neither the statute nor the regulations address the effect of reconsideration on the time for petitioning for court review. The respondent cites various federal rules of appellate procedure that provide for the suspension of the time for filing an appeal while particular motions in the nature of reconsideration are pending in the lower court. *See* Fed.R.App.P. 4(a)(4), 4(b), 41(a). *But compare* Fed.R.Civ.P. 60(b). These court rules do not govern the matter before us although they are suggestive. In any event, we think closer analogies are to be found in cases involving appellate review of decisions of agencies other than the one before us.[3]

A clear majority of cases involving appellate review of administrative decisions hold that, where the applicable statute and administrative regulations are silent, the filing of a motion for reconsideration suspends the time for filing a petition for review. *See C.O.D.E., Inc. v. ICC,* 768 F.2d 1210, 1211–12 (10th Cir.1985); *Brotherhood of Locomotive Engineers v. ICC,* 761 F.2d 714, 721 (D.C.Cir.1985), *cert. granted,* — U.S. ——, 106 S.Ct. 1457, 89 L.Ed.2d 714 (1986); *American Trucking Associations v. ICC,* 697 F.2d 1146, 1148 & n. * (D.C.Cir.1983); *B.J. McAdams, Inc. v.*

---

3. Respondent also cites a regulation that expressly provides that the time for appealing an ALJ decision to the Board is suspended while a reconsideration motion is pending before the ALJ. *See* 20 C.F.R. § 802.205A. But the ex-

press provision in that section could be construed as indicating that where the regulations are not explicit, there is no suspension of the time for appeal.

*ICC,* 551 F.2d 1112, 1114–15 (8th Cir.1977); *Tiger International, Inc. v. C.A.B.,* 554 F.2d 926, 931 n. 10 (9th Cir.), *cert. denied,* 434 U.S. 975, 98 S.Ct. 532, 54 L.Ed.2d 467 (1977); *Outland v. C.A.B.,* 284 F.2d 224, 227–28 (D.C.Cir.1960); *Nordell v. Heckler,* 749 F.2d 47, 48–49 (D.C.Cir.1984); *Chung v. INS,* 720 F.2d 1471, 1473–74 (9th Cir. 1983), *cert. denied,* 467 U.S. 1216, 104 S.Ct. 2659, 81 L.Ed.2d 366 (1984); *Tullman v. Udall,* 324 F.2d 411, 416–17 (D.C.Cir.1963), *rev'd on other grounds,* 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); *Samuel B. Franklin & Co. v. SEC,* 290 F.2d 719, 723–24 (9th Cir.) (en banc), *cert. denied,* 368 U.S. 889, 82 S.Ct. 142, 7 L.Ed.2d 88 (1961); *Montship Lines, Ltd. v. Federal Maritime Board,* 295 F.2d 147, 151 (D.C. Cir.1961). *But see Selco Supply Co. v. United States Environmental Protection Agency,* 632 F.2d 863, 865 (10th Cir.1980), *cert. denied,* 450 U.S. 1030, 101 S.Ct. 1740, 68 L.Ed.2d 225 (1981); *Nocon v. INS,* 789 F.2d 1028, 1032–33 (3d Cir.1986); *Nappi v. Commissioner,* 58 T.C. 282, 283–84 (1972); *Consolidated Flower Shipments, Inc.— Bay Area v. C.A.B.,* 205 F.2d 449, 451 (9th Cir.1953), *overruled by, Franklin,* 290 F.2d at 719. *See also C.A.B. v. Delta Air Lines,* 367 U.S. 316, 326, 81 S.Ct. 1611, 1619, 6 L.Ed.2d 869 (1961); K.C. Davis, *Administrative Law Treatise* § 26:12 at 468–72 (1983).[4]

The cases taking the majority view, that the time for appeal to the courts does not begin to run until the reconsideration motion has been decided, basically rest on a notion of judicial economy. It is obviously wasteful of the resources of the courts to burden them with objections to administrative action which may be obviated by agency action on reconsideration. For example, *Nordell v. Heckler, supra,* a case like the present one involving remedial legislation,

relies on this rationale. 749 F.2d at 49; *accord C.O.D.E.,* 768 F.2d at 1211–12; *McAdams,* 551 F.2d at 1114–15. *Nordell* also cites a distaste for over-technical interpretations that would take away the appeal rights of the litigants whom remedial legislation was intended to protect. 749 F.2d at 48–49.

On the other hand, the cases taking the minority view are all distinguishable. Thus *Selco* involved an environmental statute that required prompt decisionmaking procedures that could better prevent unnecessary injury. *See id.,* 632 F.2d at 865. *Nocon* found a Congressional desire to prevent successive, piecemeal appeals from being used as a dilatory tactic to delay deportation. *Nappi* involved an agency, the Internal Revenue Service, that has numerous discretionary and nondiscretionary, formal and informal, means of internal appeal. The reconsideration in that case was a discretionary, informal procedure not even specifically provided for by regulation.

■ We therefore think it appropriate to follow the weight of authority, which rests upon sound considerations of policy. We hold that a petition for review pursuant to 33 U.S.C. § 921(c) is timely if filed within sixty days of the Board's denial of a timely motion for reconsideration.[5] Since we have jurisdiction, we may proceed to an examination of the merits.

II

As of September 10, 1975, William Degenhardt, then 68 years old, had been employed by the petitioner for about forty years. A day or two later he was admitted to a hospital and never returned to work, although he remained an employee until his death in 1976. Degenhardt may have been a smoker at some point in the past; he had

---

4. The literal language of the Administrative Procedure Act provides that unless a statute expressly provides otherwise, agency action is final and reviewable despite the existence of either an outstanding or an already decided request for reconsideration. *See* 5 U.S.C. § 704. But the courts have generally ignored this provision and continue to apply prior case law which was to the contrary. *See Delta Air Lines,* 367

U.S. at 326, 81 S.Ct. at 1619; *Franklin,* 290 F.2d at 723–24; *American Trucking,* 697 F.2d at 1148 & n.*; Davis, § 26:12 at 468–72.

5. We note that the Department of Labor could avoid confusion in the future by explaining in the regulations the effect a reconsideration has on the time for seeking court review.

some prior history of lung impairments. He entered the hospital in 1975 suffering from chills, fever, epigastric pain and shortness of breath. Though found to be suffering from chronic obstructive pulmonary disease when admitted to the hospital, his principal medical problem was found to be bladder carcinoma. On July 20, 1976 the cancer caused his death.

Petitioner contested Mrs. Degenhardt's eligibility for black lung benefits on the ground that Mr. Degenhardt was not suffering from pneumoconiosis (black lung disease) and, or in the alternative, that that disease had not caused his disability. Only Mrs. Degenhardt testified at the hearing before the administrative law judge, but Degenhardt's medical records and administrative documents were also presented to the ALJ. The petitioner introduced a two-page analysis of these medical records prepared by Dr. Daniel Potts, its medical expert, as well as an accompanying vitae establishing the doctor's credentials.

The parties have never disputed that, due to Mr. Degenhardt's more than twenty-five years of coal industry employment prior to June 30, 1971, and the occurrence of his death before March 2, 1978, he is presumed to have been disabled by pneumoconiosis. *See* 30 U.S.C. § 921(c)(5); 20 C.F.R. § 727.-204(a); *Amax Coal Co. v. Director, OWCP*, 772 F.2d 304, 305 (7th Cir.1985). It was therefore petitioner's burden to rebut the presumption of entitlement to black lung benefits by showing that: "(1) the miner did not have pneumoconiosis; or (2) the miner was not totally or partially disabled at the time of his death; or (3) the partial or total disability which the miner may have suffered at the time of his death was not due to pneumoconiosis." *Id.*, quoting *Bishop v. Peabody Coal Co.*, 690 F.2d 131, 134 (7th Cir.1982). The ALJ found that petitioner failed to rebut the presumption and that therefore Mrs. Degenhardt was entitled to benefits. The Benefits Review Board affirmed the decision of the ALJ and also denied a motion for reconsideration. In its denial of reconsideration, the Board noted that "Arch Mineral had waived, by a failure to raise it in the original presentation to the Board, the argument that Degenhardt did not have pneumoconiosis."

■ Absent exceptional circumstances, we do not consider issues that were not raised before the Board. *Director, OWCP v. North American Coal Corp.*, 626 F.2d 1137, 1143–44 (3d Cir.1980); *Perkins v. Marine Terminals Corp.*, 673 F.2d 1097, 1100 (9th Cir.1982). We have examined Arch Mineral's initial brief in its appeal to the Board and we agree that, although Arch Mineral argued to the Board that there was insufficient proof of pneumoconiosis to support a *prima facie* case of entitlement, it never argued that the presumption under 30 U.S.C. § 921(c)(5) was rebutted by a showing that the miner did not suffer from pneumoconiosis. Arch Mineral merely argued, by way of rebutting the presumption, that Mr. Degenhardt's disability was caused by something other than pneumoconiosis. Therefore, we need consider only the two issues Arch Mineral raised before the Board: (1) there was insufficient proof of pneumoconiosis to support a *prima facie* case of entitlement and (2) by way of rebuttal, partial or total disability was not attributable to pneumoconiosis.

■ In this connection, in light of our recent decision in *Amax Coal Co. v. Director, OWCP*, 772 F.2d 304 (7th Cir.1985), decided after the filing of petitioner's main brief, a beneficiary's *prima facie* case need not include proof that the miner suffered from pneumoconiosis. Under Section 921(c)(5), proof of the requisite period of employment and the requisite date of death alone support the presumption that the miner suffered from pneumoconiosis. The burden of persuasion then shifts to the employer. *Id.* at 305.

■ As noted, there are three ways of rebutting the presumption. The petitioner's appeal here raises only one of these: rebuttal by a showing that "the partial or total disability which the miner may have suffered at the time of his death was not due to pneumoconiosis." *Id.* at 305, quoting *Bishop v. Peabody Coal Co.*, 690 F.2d

at 134. Thus we may assume that Mr. Degenhardt was disabled and that he suffered from pneumoconiosis and need only consider what caused the disability—pneumoconiosis or cigarette smoking. The ALJ properly concluded that pneumoconiosis caused the disability unless the petitioner could show that cigarette smoking was the culprit. In the ALJ's view Arch Mineral did not make the showing that cigarette smoking caused the disability. This determination by the ALJ, if supported by substantial evidence, must stand. *Knudtson v. Benefits Review Board*, 782 F.2d 97, 98 (7th Cir.1986); *Peabody Coal Co. v. Director, OWCP*, 778 F.2d 358, 362–63 (7th Cir.1985). Obviously, the present case may be distinguished from cases where the ALJ found adequate evidence to rebut the presumption. *See Amax*, 772 F.2d at 306–07. And our task at this point is simply to ascertain whether the ALJ's decision here is adequately supported.

In reviewing an award of benefits under the Act, our function is to determine whether the ALJ's findings are supported by substantial evidence. We have long held that in black-lung cases the process of weighing conflicting medical evidence and drawing inferences therefrom properly lies within the authority of the ALJ. However, the ALJ is not vested with absolute discretion to credit and discredit medical evidence. The ALJ must consider all relevant medical evidence and may not substitute his expertise for that of a qualified physician. If the coal operator introduces direct, uncontradicted testimony to rebut a presumption, the ALJ must establish a valid legal basis for refusing to consider it. In a word, the ALJ may not selectively analyze the record to reach such a desired result.

*Peabody Coal v. Director*, 778 F.2d at 362–63 (citations omitted). Further, the ALJ must determine "whether a medical opinion is sufficiently reasoned." *Id.* at 363; *accord Director, OWCP v. Rowe*, 710 F.2d 251, 255 (6th Cir.1983); *Phillips v. Director, OWCP*, 768 F.2d 982, 985 (8th Cir.1985).

In his analysis of Degenhardt's disability, Dr. Potts stated:

There is a strong association between carcinoma of the bladder and cigarette smoking and I *suspect* you will discover during the course of judicial hearings that Mr. Degenhardt was a cigarette smoker. This, of course, *could* account for his obstructive lung disease.

It is illogical to assume that Mr. Degenhardt suffered disability prior to his death on the basis of pneumoconiosis since his medical records clearly indicate his disability was on the basis of unresectable epidermoid carcinoma of the bladder. The patient was able to work up until the time of discovery of his bladder carcinoma. He was unable to work thereafter due to complications and treatment of his bladder carcinoma.... Since the patient was able to work up until the time of discovery of his bladder carcinoma, he clearly was neither partially nor totally disabled as a result of pneumoconiosis. After the discovery of his bladder cancer he clearly was disabled on the basis of this problem, and again, the pneumoconiosis does not figure into the picture. (Emphasis added.)

We note, *inter alia*, that Dr. Potts concluded that Degenhardt did not suffer from pneumoconiosis. This conclusion is contrary to the statutory presumption that must apply to the present appeal. In an affidavit, Mrs. Degenhardt stated that in 1969 a doctor told Mr. Degenhardt to quit smoking. Petitioner has not pointed to any other evidence that Mr. Degenhardt smoked and indeed failed to elicit any such evidence from Mrs. Degenhardt when she testified before the ALJ. Thus, there was no evidence to show how long Mr. Degenhardt smoked, how much he smoked, or whether he smoked cigarettes, cigars or a pipe.

In his decision, the ALJ stated, "Dr. Potts makes the suggestion that smoking could account for the obstructive lung disease. However, he did not explain the medical feasibility of distinguishing, to a

*reasonable medical certainty,* between the pulmonary disability caused by cigarette smoking as opposed to that caused by exposure to coal dust. Therefore, no weight is given to his suggestion." (Emphasis added.)

The ALJ also considered evidence that Mr. Degenhardt worked up until the day he was hospitalized to be insufficient evidence to rebut the statutory presumption. The additional fact that the death certificate did not refer to pneumoconiosis was also held inadequate to rebut the presumption because only information about the immediate cause of death must be shown on the certificate.

The petitioner is correct in arguing that this court has rejected any requirement that opinions of physicians meet a standard of "reasonable medical certainty." *See Underhill v. Peabody Coal Co.,* 687 F.2d 217, 223 (7th Cir.1982); *Peabody Coal Co. v. Lowis,* 708 F.2d 266, 274 (7th Cir.1983). But a physician's opinion must still be based on a "reasoned medical judgment" and the ALJ may determine whether a reasoned medical judgment has been made. *See id.; Peabody Coal v. Director,* 778 F.2d at 363; *Director v. Rowe,* 710 F.2d at 255; *Phillips v. Director,* 768 F.2d at 985. Although the ALJ used the rejected standard of "reasonable medical certainty," the fact is that Dr. Potts provided no explanation whatever of the medical feasibility of determining that the pulmonary disability related to cigarette smoking as opposed to pneumoconiosis. The use of the phrase "reasonable medical certainty" was therefore a mere matter of semantics; the use of the phrase was superfluous and of no legal effect. Further, Dr. Potts stated only that he "suspected" Mr. Degenhardt smoked and that the pulmonary disability "could" have been caused by smoking. As noted, there was virtually no evidence to confirm Dr. Potts' suspicions. Had the ALJ relied on Dr. Potts' suspicions, he could have been faulted for relying on a medical opinion unsupported by a reasoned medical judgment. *Cf. Rowe,* 710 F.2d at 255; *Phillips,* 768 F.2d at 984–85. Additionally, Dr. Potts' conclusion that Degen-

hardt was disabled by bladder cancer is irrelevant to Degenhardt's breathing impairment, the existence of which is not refuted. *Cf. Peabody Coal v. Director,* 778 F.2d at 363 ("The concurrence of two sufficient disabling medical causes, one within the ambit of the Act, and the other not, will in no way prevent a miner from claiming benefits under the Act."). Finally, it was within the reasonable exercise of discretion for the ALJ to find that working up to the day of hospitalization and the absence of pneumoconiosis from the death certificate did not rebut the presumption. *See* 20 C.F.R. § 727.204(d); *Amax,* 772 F.2d at 307.

For these reasons, the ALJ's decision to grant benefits is supported by substantial evidence. The petition for review is therefore

Denied.