**MIDLAND COAL COMPANY and Old Republic Insurance Company, Petitioners,**

v.

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, Respondent.**

No. 97–1166.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 27, 1998.

Decided July 1, 1998.

Rehearing and Suggestion for Rehearing En Banc Denied Aug. 31, 1998.

Mark E. Solomons (argued), Laura M. Klaus, Arter & Hadden, Washington, DC, for Petioners.

Ida Castro, Department of Labor, Appellate Litigation, Washington, DC, Rita Roppolo (argued), Christian P. Barber, Anne Swiatek, Department of Labor, Office of the Solicitor, Washington, DC, for Respondents.

Thomas O. Shepard, Jr., Benefits Review Bd., Washington, DC, for Party–in–Interest.

Before CUMMINGS, MANION, and EVANS, Circuit Judges.

MANION, Circuit Judge.

Bernard Luman worked in the coal mining industry for 32 years. In 1975, he filed a request for benefits under the Black Lung Benefits Act, 30 U.S.C. §§ 901–45, and in 1977, he died. An administrative law judge granted Luman's, and his widow's, claims, and the Benefits Review Board affirmed. Between 1993 and 1996, Midland Coal Company filed three requests to reconsider the Board's original decision, and then appealed to this court. Because we conclude that Midland Coal Company did not timely file its appeal, we dismiss this petition for review for lack of jurisdiction.

## I.

Bernard Luman worked as a coal miner for 32 years for Midland Coal Company and its predecessors. In June 1974, Luman was hospitalized and treated by Dr. Keith Frankhauser for bronchial pneumonia and pulmonary emphysema. Dr. Frankhauser concluded that "this man qualifies for black lung disease because he has had pulmonary fibrosis and certainly has marked dyspnea and has had difficulty in breathing at times." On February 18, 1975, Luman filed a request for benefits with the U.S. Department of Labor under the Black Lung Benefits Act, 30 U.S.C. §§ 901–945. In May 1975, at the request of the Department of Labor, Dr. David Holden examined Luman. Dr. Holden x-rayed Luman, but the x-ray did not reveal pneumoconiosis. However, Dr. Holden diagnosed Luman with moderately severe chronic obstructive pulmonary disease, which caused shortness of breath. Dr. Holden also found that this condition was related to Luman's coal mine employment. In August 1975, Dr. Frankhauser again examined Luman, this time at the request of the Department of Labor. Dr. Frankhauser again diagnosed pulmonary emphysema, and found that it was causally related to Luman's coal mine em-

ployment. He also noted that Luman's pulmonary condition restricted his activities and caused "marked dyspnea."

In 1976, Luman was hospitalized at the Galesburg Cottage Hospital for having a low white blood cell count and external hemorrhoids. After a six-week hospital stay, he was transferred to the Mayo Clinic in Rochester, Minnesota. Once there, Luman was diagnosed and treated for Hodgkin's disease. The actual medical records from the Mayo Clinic are not a part of the record, but five letters from Mayo Clinic treating physicians to Luman's physician at the Galesburg Cottage Hospital are. None of these letters discuss pneumoconiosis. On January 4, 1977, Luman died; the death certificate stated that the cause of death was Hodgkin's disease.

■ In 1978, Luman's widow, Lucille Luman, filed a survivor's claim with the Department of Labor. In 1980, the Department of Labor made an initial finding that Luman died due to pneumoconiosis, and was entitled to benefits. It also determined that Midland, as Luman's last employer for a duration of at least one year, was liable for these benefits. The Department of Labor informed Midland of these findings and that it would start paying benefits if Midland refused to do so. Midland refused to pay, challenging both Luman's entitlement to benefits and also its own liability for benefits. At this time, the Department of Labor began paying Mrs. Luman benefits.[1]

■ After unsuccessful attempts to resolve the dispute, the Department of Labor referred the case to the Office of the Administrative Law Judges. An evidentiary hearing was held on August 13, 1985, and in May 1986, the ALJ ruled that the medical evidence failed to establish that Luman died of pneumoconiosis and was entitled to benefits. Mrs. Luman appealed this decision to the Benefits Review Board, which reversed and remanded the decision of the ALJ. In so doing, the Benefits Review Board instructed

1. Lucille Luman died on March 8, 1993, and Midland has informed us that her estate has been administratively closed. However, this case is not moot because the Department of Labor may recover from Midland the interim benefits paid to Mrs. Luman if Midland is held liable. 30 U.S.C. § 934(b). Thus, it appears that the real parties in interest are the Department of Labor and Midland.

the ALJ to consider whether Mr. Luman was entitled to a regulatory presumption that he died of pneumoconiosis. Two possible presumptions were applicable: the "lay evidence" presumption, 20 C.F.R. § 727.203(a)(5), and the "25–year" presumption, 20 C.F.R. § 727.204(a).[2]

In 1989, a second ALJ considered the record already developed, and ruled that Luman was entitled to the "lay evidence" presumption and the "25–year" presumption, and that Midland had failed to rebut these presumptions. On March 18, 1993, the Benefits Review Board affirmed the ALJ, finding that substantial evidence supported the ALJ's conclusion. Within 30 days of the second order Midland filed a motion for reconsideration, which was denied on October 20, 1994. Within 30 days of this denial of reconsideration, Midland filed another motion for reconsideration, alleging the same errors as it did in its first request to reconsider. The Benefits Review Board denied this motion on February 15, 1995. Refusing to take "no" for an answer, Midland filed a third motion for reconsideration, similar to the first two, on March 7, 1995. The Benefits Review Board again denied the motion on November 26, 1996.

 On January 22, 1997, Midland filed this petition for review pursuant to 33 U.S.C. § 921(c) (incorporated into the Black Lung Benefits Act by 30 U.S.C. § 932(a)). This filing was within 60 days of November 26, 1996, the date of the Board's last denial of a request to reconsider, but not within 60 days of the Board's order denying Midland's first request to reconsider. The Director alerted us to a Sixth Circuit case, *Peabody Coal Co. v. Abner*, 118 F.3d 1106 (6th Cir.1997), which held that a litigant could not seek reconsideration twice, and then timely appeal the original decision. In this appeal, we must decide whether a second request to reconsider (or third for that matter) will toll the time for

filing a petition for review under § 921(c) until after the denial of the second (or third) motion.

## II.

 Initially, we note that both parties have taken the position that we have jurisdiction in this case; however, the absence of a dispute about jurisdiction does not permit us to ignore the issue. We are required to satisfy ourselves of our own jurisdiction. *See GNB Battery Tech., Inc. v. Gould, Inc.*, 65 F.3d 615, 619 (7th Cir.1995); *Commercial Nat'l Bank v. Demos*, 18 F.3d 485, 487 (7th Cir.1994). Recognizing this, Midland then suggests that because the Benefits Review Board thought it had jurisdiction to hear the successive motions for reconsideration, we should review its determination for an abuse of discretion. But the Board is not entitled to deference on this issue. "While we ordinarily give great weight to the interpretation of the agency charged with enforcement of the statute we are construing, *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984), that deference does not extend to the question of judicial review, a matter within the peculiar expertise of the courts." *Love v. Thomas*, 858 F.2d 1347, 1352 n. 9 (9th Cir.1988). Therefore, we review the question of jurisdiction *de novo*.

Section 21(c) of the Longshore and Harbors' Workers Compensation Act (LHWCA), 33 U.S.C. § 921(c), as incorporated by the Black Lung Benefits Act, 30 U.S.C. § 932(a), authorizes appeals of final orders of the Benefits Review Board to the United States Court of Appeals. The petition for review, which initiates the appeal, must be filed with this court within 60 days of the issuance of the Benefits Review Board's final order. *Id.* Section 10(c) of the Administrative Procedures Act specifies that "[e]xcept as other-

---

2. The "lay evidence" presumption is invoked when, inter alia, there is no medical evidence in the record, and non-expert witnesses testify that the miner suffered from a totally disabling respiratory or pulmonary impairment. As the Director has conceded that the medical evidence in this record precludes reliance on this presumption, we need not further discuss the contours of

this presumption. The "25–year" presumption applies when, inter alia, a miner has worked in coal mines for 25 years or more. The coal company may rebut the 25–year presumption by showing that the miner was not even partially disabled at the time of his death, or that the miner did not have pneumoconiosis. 20 C.F.R. § 727.204(c).

wise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined [a request] for any form of reconsideration ..." 5 U.S.C. § 704.

The literal meaning of § 10(c) is that, unless there is an exception, a motion for reconsideration does not affect the finality and reviewability of an agency order. *See Arch Mineral Corp. v. Director, OWCP*, 798 F.2d 215, 219 n. 4 (7th Cir.1986). Despite this unambiguous language, "section 10(c) ha[s] been almost completely ignored in judicial opinions." *Darby v. Cisneros*, 509 U.S. 137, 145, 113 S.Ct. 2539, 125 L.Ed.2d 113 (1993) (citing 3 K. Davis, *Administrative Law Treatise* § 20.08, at 101 (1958)). Rather, courts have continued "to apply prior case law which was to the contrary." *Arch Mineral*, 798 F.2d at 219 n. 4. *See, e.g., Outland v. Civil Aeronautics Board*, 284 F.2d 224, 227–28 (D.C.Cir.1960) (relying on pre-APA case law to find that despite § 10(c), a motion for reconsideration tolls time for appeal); *see also Consolidated Flower Shipments, Inc.-Bay Area v. Civil Aeronautics Board*, 205 F.2d 449, 451 (9th Cir.1953) (plain meaning of § 10(c) prohibits request to reconsider from tolling time to appeal), *overruled by Samuel B. Franklin & Co. v. SEC*, 290 F.2d 719, 723–25 (9th Cir.1961) (relying on "the context of the legislation as a whole" and legislative history).

*Darby* appears to cast some doubt upon this line of cases. In *Darby*, the Department of Housing and Urban Development (HUD) barred a real estate developer from contracting with all executive agencies. The developer sued, and HUD defended on the grounds that the developer had failed to exhaust his administrative remedies. The Court first discussed *ICC v. Brotherhood of Locomotive Engineers*, 482 U.S. 270, 107 S.Ct. 2360, 96 L.Ed.2d 222 (1987). This case turned on a provision of the Hobbs Act, 28 U.S.C. § 2341 *et seq.*, a provision analogous to § 10(c) of the

APA. According to *Darby*, in *Locomotive Engineers* the Court noted "the plain language of § 10(c)," *Darby*, 509 U.S. at 145, 113 S.Ct. 2539, but did not apply it, instead relying upon precedent applying the pre-APA case law. *See also Locomotive Engineers*, 482 U.S. at 284–85, 107 S.Ct. 2360. The Court in *Darby*, however, rejected the methodology used in *Locomotive Engineers*:

> While some dicta in these cases might be claimed to lend support to respondents' interpretation of § 10(c), the text of the APA leaves little doubt that the petitioners are correct.... When an aggrieved party has exhausted all administrative remedies *expressly* prescribed by statute or agency rule, the agency action is "final for the purposes of this section" and therefore "subject to judicial review" under the first sentence.... [S]ection 10(c), by its very terms, has limited the availability of the doctrine of exhaustion of administrative remedies to that which the statute or rule *clearly* mandates.
>
> The last sentence of § 10(c) refers *explicitly* to "any form of reconsideration" and "an appeal to a superior agency authority." Congress clearly was concerned with making the exhaustion requirement unambiguous so that aggrieved parties would know precisely what administrative steps were required before judicial review would be available.

509 U.S. at 146, 113 S.Ct. 2539 (emphasis added). Thus, a unanimous Supreme Court held that under § 10(c), appealing parties had to exhaust only those administrative remedies expressly provided for by regulation. *Darby* does not purport to overrule the result in *Locomotive Engineers*, but as *Darby* unquestionably rejects some of that case's reasoning, we cannot turn a blind eye to the literal language of § 10(c).[3] Thus, unless there is a statute to the contrary, or this provision of the APA does not apply to black lung cases, a motion for reconsideration does not toll the time to appeal. As neither party

---

**3.** Arguably *Stone v. INS*, 514 U.S. 386, 115 S.Ct. 1537, 131 L.Ed.2d 465 (1995), cited *Locomotive Engineers* with approval. However, *Stone* turned on provisions of the Hobbs Act which specifically addressed deportation orders, and thus, the Supreme Court had no occasion to revisit the gen-

eral provisions of the Hobbs Act, or the APA. We believe *Darby*, which actually addressed the APA, rather than the Hobbs Act, more accurately reflects the Supreme Court's current view of § 10(c).

has cited, and we cannot find, any statutory provision which would allow a second (or for that matter, a first) motion for reconsideration to toll the time for appeal to this court under the facts of this case, the only issue left to analyze is whether § 10(c) of the APA applies to black lung litigation.

■ "Unquestionably, the APA applies to black lung adjudications." *Freeman United Coal Mining Co. v. OWCP*, 988 F.2d 706, 710 n. 6 (7th Cir.1993). But this does not mean that every provision of the APA necessarily applies in black lung cases. "The [Black Lung Benefits Act] incorporates the APA (by incorporating parts of the LHWCA), but it does so 'except as otherwise provided ... by regulations of the Secretary.' 30 U.S.C. § 932(a)." *Director, OWCP v. Greenwich Collieries*, 512 U.S. 267, 271, 114 S.Ct. 2251, 129 L.Ed.2d 221 (1994). In other words, if the Secretary of Labor has promulgated regulations which expressly provide for tolling the time in which to appeal, then § 10(c) does not apply. Thus, ultimately to determine if § 10(c) applies to the Benefits Review Board, we must look to the regulations governing petitions for review, found at 20 C.F.R. §§ 802.401–409.

The applicable regulations explicitly provide that "[i]f a timely request for reconsideration has been filed, the 60–day period for filing such petition for review [to the U.S. Court of Appeals] will run from the issuance of the Board's decision on reconsideration." 20 C.F.R. § 802.406. A motion for reconsideration is timely if it is filed within 30 days of the filing of a decision under 20 C.F.R. § 802.403. See 20 C.F.R. § 802.407. Therefore, if a party-in-interest files a request for reconsideration within 30 days of the rendering of a decision, the 60–day deadline to appeal the original decision to the U.S. Court of Appeals restarts upon the issuance of the decision on reconsideration.

■ Thus, a motion for reconsideration filed within 30 days of a decision tolls the time to appeal to this court, and § 10(c) of

the APA does not apply to the first motion for reconsideration. When the first motion is denied, the original, "noninterlocutory order" stands, and the loser has 60 days to appeal to the United States Court of Appeals. But what about the second motion for reconsideration?[4] The parties contend that 20 C.F.R. § 802.407(a), read in conjunction with 20 C.F.R. § 802.406, operates to permit successive motions for reconsideration to toll the time to appeal. Section 802.407(a) provides that a "party-in-interest may, within 30 days from the filing of a decision or non-interlocutory order ... request reconsideration of such decision," then claim that the denial of a request for reconsideration is also a "non-interlocutory order" under 20 C.F.R. § 802.407(a). The parties then go on to contend that a request for reconsideration filed within 30 days of the denial of a request for reconsideration has been "timely filed," so it tolls the time to appeal the original decision. 20 C.F.R. § 802.406. Their contention is not correct. The filing of the second request to reconsider would merely toll the time to appeal *the denial of the first request for reconsideration*. But because motions for reconsideration are committed to agency discretion, we do not have jurisdiction over internal appeals of such motions. *See, e.g., Schneider National, Inc. v. Interstate Commerce Commission*, 948 F.2d 338, 344 (7th Cir.1991) ("An agency decision to deny reconsideration is dispositive as long as the agency makes no alteration in the underlying order or the petition requesting reconsideration is not based upon new evidence or changed circumstances. This type of decision has been traditionally committed to agency discretion and is unreviewable under 5 U.S.C. § 701(a)(2)."). Only the final, non-interlocutory decision on the merits is appealable to this court. Once 60 days expires after the original decision, or after the first denial of reconsideration, this court has no jurisdiction over an appeal.

4. Throughout this opinion, we assume that a second motion for reconsideration is filed more than 30 days after the issuance of the original decision. If a second request to reconsider were filed within 30 days of the original decision, an

unlikely occurrence, then the second motion would be timely with regard to the original decision, and the regulations only bar untimely motions to reconsider.

Perhaps if § 802.406 stated that a timely request to reconsider tolls both the 60–day deadline for appeal and the 30–day deadline for filing a timely motion to reconsider, then the second request to reconsider could be filed within the newly restarted 30–day period for filing a timely request to reconsider the original decision. In that event, the second request to reconsider would be a timely request to reconsider the original decision, and would toll the time to appeal the original decision. But understandably there is no such provision. The second request to reconsider is either an untimely request to reconsider the original decision, or an unreviewable request to reconsider the denial of the first motion to reconsider. In either event, we have no jurisdiction.

██ Midland also points to 20 C.F.R. § 802.409, which provides "all requests for reconsideration shall be reviewed by the Board." Midland contends that this provision allows successive motions for reconsideration. We agree, but the provision does not advance Midland's case. Merely because the Board will review a request for reconsideration does not mean that an appeal of the original decision on the merits may be had after denial of the review. Otherwise, the regulation's tolling for *"timely* requests to reconsider" would be superfluous. 20 C.F.R. § 802.406 (emphasis added). Nothing in § 802.409 allows a second motion for reconsideration to toll the time to appeal the original decision on the merits.

In previous cases where regulations have not addressed a particular procedural point, we have looked to the practice of other agencies. *See, e.g., Arch Mineral Corp. v. Director, OWCP*, 798 F.2d 215, 218 (7th Cir. 1986). Applying the same methodology to this case compels the conclusion that we do not have jurisdiction. The parties supply no precedent, and despite extensive research, we have been unable to locate any other agency or court which allows multiple motions for reconsideration of the same subject

matter to toll the time to appeal to a higher court.

Other courts have reached the same conclusion. In *Peabody Coal Co. v. Abner*, 118 F.3d 1106, 1108 (6th Cir.1997), *Peabody Coal*, represented by the same counsel litigating on behalf of Midland, lost before the Benefits Review Board, and then filed two successive motions for reconsideration, both of which were denied. Then it appealed to the Sixth Circuit. Relying on jurisprudence applicable to Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure, the Sixth Circuit held that it did not have jurisdiction. *Id. Abner* quoted our own precedent, *Charles v. Daley*, 799 F.2d 343, 347 (7th Cir.1986): "The time limit would be a joke if parties could continually file new motions, preventing the judgment from becoming final." 118 F.3d at 1108.

Similarly, in *Sendra Corp. v. Magaw*, 111 F.3d 162 (D.C.Cir.1997), the D.C. Circuit held that an appeal of a decision of the Bureau of Alcohol, Tobacco and Firearms was not timely taken:

[T]he Bureau's 1993 letter—a letter Sendra considers final agency action—constituted the Bureau's fourth refusal to reconsider its 1987 decision. While an agency's first refusal to grant reconsideration may be reviewable in limited circumstances, its denial of successive requests for reconsideration of the same decision are not.

*Id.* at 166–67. This rationale is equally applicable in this case. We conclude that Midland's petition for review was not timely filed, and we dismiss for lack of jurisdiction.[5]

## III.

In summary, the applicable regulations do not expressly provide for multiple requests to reconsider, followed by an appeal, and § 10(c) of the APA requires such a provision be expressly stated. Moreover, the Sixth Circuit and D.C. Circuit have held that successive motions for reconsideration do not toll the time to appeal from an agency to the U.S. Court of Appeals. Therefore, we con-

---

5. While we do not have jurisdiction, we note in passing that Midland's claim appears meritless. The ALJ relied upon the reports of two examining physicians, Drs. Holden and Frankhauser, who diagnosed Luman with pneumoconiosis. As we do not reweigh evidence on appeal, we see no grounds on which to reverse the determination of the ALJ.

clude that the second and third motions for reconsideration did not toll the time to appeal from the original decision. Because Midland's appeal was not filed within 60 days of the denial of its first request to reconsider, it was not timely filed, and we DISMISS for lack of jurisdiction.